RUBY PLEMMONS, VERENIA PLEMMONS and SELMA SHELTON, (Claimants) Respondents, v. PEVELY DAIRY COMPANY, (Employer) Appellant.—233 S. W. 2d 426.

St. Louis Court of Appeals. Opinion filed October 17, 1950.

Respondents' motion for rehearing, or, in the alternative, to transfer cause to the Supreme Court overruled November 17, 1950.

Application for transfer denied by Supreme Court January 8, 1951.

660

*Wm. H. Allen* and *David v. Campbell,* for appellant.

*H. O. Eldredge* and *Lawrence Presley* for Respondents.

ANDERSON, P. J.—This is a proceeding instituted by Ruby Plemmons, Verenia Plemmons, and Selma Shelton, daughters of Otto Rowden, deceased, against the Pevely Dairy Company to recover compensation, under the Missouri Workmen's Compensation Act, as partial dependents of their father who, while in the employ of Pevely Dairy Company on that company's farm near Crescent, St. Louis County, Missouri, was gored and killed by a bull.

Two defenses were interposed. They were: "(1) that the employee was engaged in farm labor at the time of the fatal accident and is not within the beneficial coverage of the Act, by reason of Section 3693, R. S. Mo. 1939, the applicable portion of which section reads:

'Sec. 3693. * * * Sections 3690, 3691 and 3692 of this chapter shall not apply to any of the following employments: * * *

'Second. Employments of farm labor and domestic servants including family chauffeurs,'

and, (2) that respondents were not dependents of deceased employee.''

The referee found in favor of the employer on the theory that the deceased employee at the time of his injury and death was employed in farm labor. On review, the Industrial Commission reversed the finding of the referee, and found: "that Otto Rowden, deceased, was an employee of the Pevely Dairy Company within the provisions of the Workmen's Compensation Act; his work being incidental to and an integral part of the industrial operation of the Pevely Dairy Company, and that he was not engaged in general farm labor as contemplated in Section 3693 of the Missouri Workmen's Compensation Law; and that Ruby Plemmons, Verenia Plemmons and Selma Shelton, daughters of the deceased, were all partial dependents of Otto Rowden on June 26, 1947, within the meaning of Section 3709(c).''
An award was then entered in favor of claimants as partial dependents of the deceased employee. The Circuit Court affirmed the award of the Industrial Commission and, from this judgment of the Circuit Court, the employer has appealed.

The facts touching on the issue as to whether deceased was within the coverage of the Workmen's Compensation Act were admitted and embraced within a stipulation introduced in evidence. Said stipulation is as follows:

### "Stipulation of Facts

"1. That employer is and was on June 26, 1947, a major employer engaged in the business of purchasing, producing, processing and pasteurizing milk, and producing and manufacturing milk products, and selling same at retail and wholesale to the public in the City and County of St. Louis, Missouri.

"2. That the employer owns a farm near Crescent in St. Louis County, Missouri, commonly known as the Pevely Farm; that this farm is used by employer for the purpose of maintaining, supporting, breeding, milking and care of a herd of about 150 milk cows, and the growing and raising of feed for said cows; that said cows are milked twice daily, and all milk thus derived after being pasteurized and bottled, is sold by the employer to the public as Grade A Milk or Pasteurized Milk.

"3. That employee on June 26, 1947, and for one year prior thereto was in the employ of employer at said Pevely Farm in the care and breeding of the cows on the farm, particularly the care of the dry cows, care of such cows when calving, care of the calves, in barns and fields, the mixing of feed and the feeding of dry cows and calves. As soon as cows again freshened they were returned to the regular milk herd away from care of the deceased.

"4. That employee sustained an accident arising out of and in the course of his said employment on June 26, 1947, and died as result of injuries received in said accident on June 26, 1947, being at the time of said accident gored by a bull which was servicing a cow on said Pevely Farm.

"5. That neither the employer nor the employee had filed any rejection of the Missouri Workmen's Compensation Act prior to June 26, 1947.

"6. That Ruby May Plemmons, Verenia Plemmons and Selma Shelton were the only children of employee on June 26, 1947, and employee was a widower and a single man on that date.

"7. That employee's average weekly wage was $31.62."

Appellant urges that the trial court erred in affirming the award of the Industrial Commission for the reason that the stipulated facts show, as a matter of law, that Rowden was employed in farm labor and, consequently, by the terms of Section 3693, R. S. Mo. 1939, Mo. R.S.A., sec. 3693, excluded from the beneficial coverage of the Workmen's Compensation Act.

We find no cases in Missouri in point, but a review of the cases from other states construing similar acts leads us to the conclusion that appellant's contention must be sustained. Those cases hold that it is the character of the work itself, and not the business of the employer, that is determinative. In the case at bar, Rowden was employed on a farm and it was stipulated that his duties were: "the care and breeding of cows on the farm, particularly the care of dry cows, care of such cows when calving, care of the calves, in barns and fields, the mixing of feed, and the feeding of dry cows and calves." Clearly, these duties were those of farm labor.

We will not pursue the matter further except to briefly review the cases from other jurisdictions which we believe correctly announce the principles applicable here.

In Beyer v. Decker et al., 159 Md. 289, 150 Atl. 804, the employer owned and operated farms with an aggregate of about 500 acres on which he carried on a dairy business. He also raised corn, wheat, oats, etc. He kept about 30 cows, and some young stock. He had a milk route on which he delivered 400 or more bottles daily, and any surplus

milk from the farm he delivered to a wholesaler who transported it to Philadelphia. Claimant was regularly employed in dairy work and drove a horse and wagon delivering surplus milk at the stations, to the wholesaler. His duties did not include any work on the farm crops. He regularly started in the morning milking the cows and seeing that the surplus milk was delivered to the stations, hauled out manure, threw down feed, took care of his horse and wagon, washed out bottles and cans, drove back and forth, and "did anything that had to be done around" in connection with dairy farming. At times he would be put to other work to occupy his time. Claimant suffered an injury arising out of and in the course of his employment. The Maryland Act excluded from its coverage employees "engaged in rendering any agricultural service, * * (or) in service incidental to and in connection with agricultural pursuits or developments." It was held that claimant was not entitled to compensation. The court said:

"It may be that there are dairying operations now carried on upon such a scale, or under such circumstances, that they could not properly be classified as agricultural, but it is true that dairying operations are still carried on by many farmers as parts of general agricultural occupations. Ordinary farms, in other words, have long supplied milk, and many farmers still do so, as ordinary parts of their farming. And, of course, there is on every farm some work of delivering or shipping the products. In our opinion the statutory exception was intended to include work of dairying of the kind long familiar as an incident of ordinary farming. And the mere facts that the claimant was working in connection with a dairy, and delivering the wholesale milk, do not therefore remove him from the excepted class of farm laborers. The statute does not afford a precise definition of an agricultural laborer, or an exact indication of the point where dairying may cease to be part of a farming operation and become a commercial occupation. The courts are required to construe the statute with respect to the work done in each case. In this case, the employee's work appears to have been such as has been an incident of ordinary farming operations for a long time in the past, and we concur with the trial court in the conclusion that he was within the excepted class, and so not entitled to compensation under the provisions of the act." Beyer v. Decker et al., 159 Md. 289, 150 Atl. 804, 805-6.

In Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N.W. 304, the employer, Parke, Davis & Co., was a corporation engaged in the manufacture and selling of chemicals and pharmaceuticals. It owned a farm where it raised hay, wheat, rye, and other farm products, but its principal use was in connection with the company's laboratory in

Detroit. Large numbers of guinea pigs were kept upon the farm for experimental purposes, together with other animals, including some 200 horses, or more, and the principal product of the farm was serum for the Detroit office. Hay and such other products as were adapted to the purpose was used on the farm for feeding the animals, but the wheat and rye and products that could not be so used were sold. Claimant was employed generally on the farm caring for the horses and stables, and in the summer at general farm work, such as planting, tilling, and harvesting the crops. While feeding the horses he was kicked by one of them and presented his claim for compensation for the injury he received. The Michigan Act excludes farm laborers from the benefits. The Industrial Accident Board found that the employee was not a farm laborer. The Supreme Court reversed the Board's finding, and said:

"The growing of grass and grain and the raising and care of stock are the ordinary uses to which a farm is put, and the work of raising, tilling and harvesting the grain and caring for the stock is ordinary farm labor. Any man employed to work on a farm and to perform the work ordinarily done there, is a farm laborer. The statute does not classify the employee by the ordinary business of his employer, but by the kind of work he, himself, is employed to do. And any attempt to classify the employee through a consideration of the uses for which the produce of the farm is designed would lead to endless confusion. Horses are raised and kept upon a farm for many purposes other than that of tilling the soil. If any farmer in the vicinity had seen fit to raise and keep horses for the purpose of supplying serum to the respondent, he would still be a farmer; and anyone employed to do such work with and around the horses, as is usually done on a farm, would be a farm laborer." Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N.W. 304, 305.

In Keeney v. Beasman, 169 Md. 582, 182 Atl. 566, it appears that the employer owned a farm utilized for the production of milk which he sold in bulk and in bottles over a retail milk route. In connection with the farm was a 300 gallon pasteurizing plant. The farm contained 600 acres, part woodland, part in pasture, and the remaining in grass and grain, except for small lots used for gardens adjacent to dwellings occupied by the owner and his tenants. Crops grown on the farm were fed on the place, the produce of the gardens consumed by the owner and his employees. None of the crops were sold. The employee, at the time he received the injury from which he died, was engaged in removing a stump from an alfalfa field. His duties were principally farm duties; he was required to milk cows, cultivate crops, work on a hay wagon, drive a team occasionally, cut hedges, wash

buckets in the pasteurizing plant, and do some cementing and painting of farm implements. The Compensation Act provided . that: "'Employee' * * shall not include farm laborers. 'Farm Laborers' * * * shall mean any employees who, at the time of the accident, are engaged in rendering any agricultural service, including the threshing or harvesting of crops, or who, at the time of the accident, are engaged in service incidental to and in connection with agricultural pursuits or developments, whether the employer be the farmer or other person undertaking or contracting with the farmer to perform any such agricultural service, pursuit or development." The trial court directed a verdict for the employer and insurer. The employee appealed, contending that the main business of the employer was dairying, which was not farming, nor was it incidental to farming, and therefore the employee was not a farm laborer within the meaning of the Act. The Court of Appeals affirmed the ruling of the trial court, and said:

"Literally, agri cultura means the tillage or cultivation of the soil. But, like many words compounded of different elements, it has a meaning of its own broader than that of its elements considered separately, for from time immemorial it has been regarded as synonymous with husbandry, and includes not only the cultivation of the soil and the raising of crops, but also 'gathering in the crops and raising live stock,' Oxford Dictionary, and as a national concomitant of those activities, marketing the products of the soil, the increase and the products yielded by the stock, such as wool and milk. That has been so from the earliest times.

\* \* \* \* \* \* \* \*

"In Rawle's Ed. of Bouvier's Law Dictionary this definition is given: 'The cultivation of soil for food products or any other useful or valuable growths of the field or garden; tillage, husbandry; also, by extention, farming, including any industry practised by a cultivator of the soil in connection with such cultivation, as breeding and rearing of stock, dairying,' etc. In Mayor, etc., of City of Philadelphia v. Davis, 6 Watts & S. (Pa.) 269, 279, 'farm products' were held to be 'swine, horses, meat cattle, sheep, manure, cordwood, hay,' as well as 'vegetables, fruit, eggs, milk, butter, lard, and other provisions for the mouth.' In Davis v. Industrial Commission, 59 Utah, 607, 206 P. 267, 268, a sheep herder was held to be an 'agricultural laborer.' In State ex rel. Brittain v. Hayes, 143 La. 39, 78 So. 143, it was held that a farmer who goes from place to place selling at retail the products of his farm is only pursuing the business or occupation of a farmer, in Hill v. Georgia Casualty Co. (Tex. Com. App.) 45 S.W.

2d 566, 567, it was held that one employed at a nursery for the propagation of trees, vines, shrubs, etc., was an agricultural laborer, and in Greischar v. St. Mary's College, 176 Minn. 100, 222 N.W. 525, 526, it was held that milking cows and plowing the fields on a dairy farm must 'be considered the work of a farm laborer, just the same as would be the same work upon any other sort of a farm.' " Keeney v. Beasman, 182 A. 566, 568, 569.

The court, in the case last above cited, explained certain language used in Beyer v. Decker, 159 Md. 289, 150 Atl. 804, which was contended by appellant to indicate a holding that, where the principal business is dairying, the business is not to be regarded as agricultural service. The court said:

"What the court had in mind in making that statement was obviously the distinction between the production and sale of milk yielded by cattle maintained on the farm as a part of its operation and the business of buying and selling milk, or of manufacturing and selling milk products apart from, and independent of, any farm, for obviously in the latter case the work not having any connection with a farm would not be agricultural in its nature. But, where the milk sold is produced by cattle kept on the farm as a part of its operation, the business of producing and selling it is necessarily an agricultural pursuit, for the production of milk from cattle which consume the crops grown on the farm is as clearly an agricultural pursuit as raising sheep for their wool, or beef cattle for sale, or even of crops for sale. The fact that the farmer feeds his crops to cows that they may yield milk which he can sell does not make the business any less a farming business than if he had sold the crops directly." Keeney v. Beasman et al., 182 A. 566, 569.

In Ocean Accident & Guarantee Co. et al. v. Industrial Commission of Utah et al., 256 P. 405, the Ogden Realty & Investment Company owned 180 acres of land and was engaged in excavating, cleaning and marketing sand and gravel from a part of this land. About 40 to 50 acres of the 180 acre tract were devoted to the raising of alfalfa hay. All of the hay that was produced was fed to the horses owned and used by the company in its operations. The tract of land was purchased by the corporation for the sand and gravel it contained, and the entire tract was valuable for that purpose. As excavations for sand and gravel were made the area growing alfalfa was diminished. In excavating and cleaning sand and gravel the company owned and operated machinery, conveyors, belts, and other equipment. Eleven or twelve men worked in the gravel pit and six men worked in the hay in constructing a hay derrick to be used in stacking hay. The deceased employee cut and raked five acres of alfalfa for the agreed price of $8.00, and entered into an agreement with the com-

pany to assist in cutting, raking, and stacking the alfalfa growing upon the remainder of the premises. While engaged in raking hay he was struck by lightening. The receiver in charge of the company testified that he had intended to put deceased to work at the gravel pit when the hay was stacked, but there was no contract to that effect. It does not appear whether deceased intended to work in the gravel pit after the hay was put up. At the time of his death he had done no work for the company except the work of cutting and raking hay. Agricultural laborers and domestic servants were excepted from benefits under the Compensation Act. The Industrial Commission made an award in favor of claimants, which the Supreme Court reversed. The Court said:

"Cutting and raking hay are essentially agricultural pursuits and persons employed to perform such work and paid by the day are agricultural laborers. Tested by the nature of the work the deceased was performing at the time he met his death, he was expressly excluded from the provisions of the Workmen's Compensation Act above quoted.

\* \* \* \* \* \* \* \*

"The deceased being an agricultural laborer at the time of his death, the award must be sustained, if sustained at all, by reason of the occupation of the employer. There is no doubt but that the principal trade, business, or occupation of the employer was that of marketing sand and gravel, but at the same time the company was also engaged to a substantial extent in agriculture. \* \* \* This is not a case where the employee temporarily digresses from his usual work, but a case where the employer is engaged in two occupations, one coming under the Workmen's Compensation Act and one that does not come under the Act unless the employer so elects. The cultivating, irrigating, cutting, raking, hauling, and stacking of hay requires almost constant attention and constitutes an occupation or business as much as that of marketing sand and gravel. The mere fact that the company's agricultural pursuit was a minor business or occupation does not change its status so long as the agricultural operations are of such a nature as to constitute a usual trade, business or occupation.

"It is contended on behalf of the applicants for compensation that the general business of the employer is the controlling feature in determining the nature of the employment and the right to compensation. It will be observed that the provisions of the Workmen's Compensation Act place domestic servants and agricultural laborers in the same class. It seems clear that the Legis-

lature intended that an employer of agricultural laborers, as well as an employer of domestic servants, does not come under the provisions of the Act without he elects so to do so long as the employees are engaged exclusively in the one or the other of those vocations. It would be a strange doctrine to hold that domestic servants of a person whose occupation is subject to the provisions of the Workmen's Compensation Act are within its provisions while domestic servants of a person engaged in agricultural pursuit are excluded therefrom. On principle we can see no good reason why an employer engaged in any of the occupations included within the Act may not have employees engaged exclusively in agricultural work and be subject to the same law as the agriculturalist is subject to when he employs agricultural laborers, and we believe such was the clear intention of the Legislature as expressed in the Workmen's Compensation Act.

\* \* \* \* \* \* \* \*

"The mere fact that the hay raised upon the alfalfa land was fed to the horses used in operating the sand and gravel beds cannot be said to change or affect the rights of the parties herein." Ocean Accident & Guarantee Co. et al. v. Industrial Commission of Utah et al., 256 P. 405, l.c. 407, 408.

In Ginn v. Forest Nursery Co., (Tenn.) 52 S.W.2d 141, it is said:

"We think a sound general rule may be taken from the opinion in Dowery v. State, 84 Ind. App. 37, 149 N. E. 922, 923, wherein it was said: 'It is to be observed that the statute does not classify the employee in accordance with the general occupation or business of the employer. Whether a laborer is or is not a farm employee is determined from the character of the work he is required to perform.' This rule is properly interpreted in Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N.W. 124, by the holding: 'Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to, to determine whether he is a farm laborer. That is what is meant by the statement that it is "the character of the work which the employee is hired to perform, which is the test of whether the employee is a farm laborer." ' These propositions are supported by many cases. (citing cases)

\* \* \* \* \* \* \* \*

"It is of course recognized that a commercial nursery may engage in many business activities not agricultural in nature. It may maintain a warehouse or a large salesroom, with many attend-

ants and salesmen whose work may be wholly disconnected from farming or agricultural operations. But under the authorities cited, if it employs laborers whose employment requires them to do only farm or agricultural labor, such contracts of employment are excluded from the application of the Compensation Law, regardless of the general nature of the employer's business.

"The employment of the plaintiff in error in the case before us required him to till the soil, to tend growing plants, shrubs, and young trees, to prepare them for market, and deliver them to a shipping point. The harvesting and marketing of grain, the transplanting and care of tobacco plants, and the delivery of a bale of cotton from farm to shipping point, are all ordinary incidents of farm labor. The work and labor performed by plaintiff in error differed from that of the ordinary farmer only in the kind and nature of the products of the soil grown and prepared for market. No difference in hours of labor, hazard or remuneration is pointed out which might induce a Legislature to include the one and exclude the other from the operation of the statute. The labor performed by plaintiff in error and contemplated by his employment was agricultural in the literal sense and meaning of the word, and we think we would not be justified in holding that he was not a 'farm or agricultural laborer.'" Ginn v. Forest Nursery Co., 52 S.W.2d 141, 142.

In Dowery et al. v. State, (Ind.) 149 N. E. 922, the facts were that: "the Indiana Girls' School is, and for many years has been, a state institution for the education and training of delinquent girls. In connection with, and as a part of, the institution there is operated a farm for the production of grain, vegetables, fruit and live stock. * * * Joseph Dowery, an employee of the school, whose duties as such employee were limited to work in the operation of the farm, received an injury as a result of an accident which arose out of and in the course of his employment." From an order of the Industrial Board denying compensation, claimant appealed. It was held that claimant was a farm or agricultural employee within the meaning of the Act and not entitled to compensation. The Court said:

"It is appellee's contention, and by its order denying compensation the Industrial Board held, that, although the farm was being operated in connection with, and incidental to, the conduct of the school, Dowery, whose work was confined to farm labor, was a 'farm employee' within the meaning of that term as used in the section of the act to which we have referred. It is to be observed that the statute does not classify the employee in accordance with the general occupation or business of the employer. Whether a laborer is or is not a farm employee is determined from the character of the work he is required to perform. 28 R.C.L. 718; Sha-

fer v. Parke, Davis & Co. (1916) 192 Mich. 577, 159 N.W. 304; Bates v. Shaffer (1921) 216 Mich. 689, 185 N.W. 779: Fleckles v. Hille (Ind.App. 1925), 149 N.E. 915.'' Dowery et al. v. State, 149 N.E. 922, 923.

Counsel for respondents contend that, under the admission of counsel for appellant, the deceased employee was entitled to beneficial coverage under the Act, and that this court is precluded from holding otherwise.

At the opening of the trial the following proceedings were had:

''REFEREE LURTON: * * * So we can shorten the proceedings I will ask the preliminary questions.

''Q. Is it admitted that on or about June 26, 1947, Pevely Dairy Company was a major employer, operating under the provisions of the Missouri Workmen's Compensation Law, and that their liability under said Law was fully insured by self?

''MR. CAMPBELL: That is right.

''REFEREE LURTON: Is it admitted on or about June 26, 1947, Otto Rowden was an employee of Pevely Dairy Company and was working under the provisions of the Workmen's Compensation Law of the State of Missouri?

\* \* \* \* \* \* \* \*

''MR. CAMPBELL: Yes, sir, that is right.

''REFEREE LURTON: Is it admitted that on or about June 26, 1947, he sustained an accident arising out of and in the course of his employment?

\* \* \* \* \* \* \* \*

''MR. CAMPBELL: Yes, sir, that is right.

''REFEREE LURTON: Is it admitted that the employer had notice of the injury and a claim was filed within the time prescribed by law?

''MR. CAMPBELL: That is right.

''REFEREE LURTON: Can we agree on the average weekly wage?

''MR. PRESLEY: $33.00. (This wage corrected to $31.62, page 77).

''MR. CAMPBELL: Yes, sir.''

By its answer appellant pleaded that: ''Employer denies that the Division of Workmen's Compensation has jurisdiction to hear claim for compensation filed herein for the reason that the deceased, Otto Rowden, was engaged in farm labor at the time of the accident.''

It further appears that respondents did not rely on the so called admission, but offered in evidence the stipulation which contained the facts upon which the issue raised by appellant's answer was resolved.

There are several reasons why respondents' contention cannot be sustained. In the first place, if there was an admission, as contended for by respondents, it was one of law and not of fact. It was not made to deceive or mislead the respondents, nor were respondents induced to do, or omit to do, anything they would have done, or omitted, had the so called admission not been made. Under such circumstances, the admission was not binding on the court, or on the party by whom it was made. 31 C.J.S. Evidence, Sec. 381, page 1171; Bradway v. Miller, 200 Mich. 648, 167 N.W. 15; People v. Pittsburg, Ft.W. & C. Ry. Co. et al., 244 Ill. 166, 91 N.E. 48; City Club of Auburn v. McGeer, 198 N.Y. 160, 91 N.E. 539.

A case illustrative of the principle above announced is People v. Pittsburg, Ft. W. & C. Ry. Co. et al., supra. In that case plaintiffs filed suit to enjoin defendants from occupying a portion of Stewart Avenue in the City of Chicago with elevated structures and operating trains thereon, or, in the alternative, to recover the value of the fee in said street. One of the questions on appeal was whether a certain ordinance requiring the elevation of the defendants' tracks was or was not a vacation of the street in the sense that a reverter of the fee therein resulted to the abutting property owners or to the dedicator. On this issue, plaintiffs relied upon an admission contained in defendants' answer to the effect that when the embankment upon which defendants were to lay their tracks had been completed, 66 feet of Stewart Avenue would be legally vacated under the ordinance. The court held that neither the defendants nor the court were bound by this admission of law. The court said:

"The answer of defendants in error admitted that when the embankment upon which they were to lay their tracks had been completed, 66 feet in width of Stewart Avenue would be legally vacated under the ordinance. After the chancellor had announced his decision in favor of defendants in error, and before decree entered, defendants in error asked leave to amend their answer by striking out said admission. The chancellor denied the leave, and the plaintiffs in error contend that the defendants in error are barred by said admission and cannot be heard now to deny that said street was vacated. The admission was one of law and not of fact. It was not made to deceive, and did not deceive or prejudice, plaintiffs in error. They were not induced by it to do or omit to do anything they would have done or omitted had the admission not been made. The admission had no influence upon the decision of the chancellor, for, notwithstanding the admission,

the finding was for the defendant and the bill was dismissed. Parties cannot, by their admissions of law arising out of an undisputed state of facts, bind the court to adopt their view. They may, where the admission was made through fraud or where it induced the opposite party to assume a position he would not have assumed had the admission not been made, estop themselves from afterwards denying it. But such was not the case here. Plaintiffs in error were not prejudiced or in any way deceived or injured by it. They knew the facts upon which the admission was based as well as defendants in error knew them. The only effect of the admission was advantageous to plaintiffs in error. Under this state of the case neither the parties nor the courts are bound by such admission. Seigel, Cooper & Co. v. Colby, 176 Ill. 210, 52 N.E. 917; Holcomb v. Boynton, 151 Ill. 294, 37 N.E. 1031; Bigelow on Estoppel (5th Ed.) pp. 569-573.'' People v. Pittsburg, Ft.W. & C. Ry. Co. et al., 244 Ill. 166, 91 N.E. 48, loc. cit. 50, 51.

It is a well established principle of law that where a party does not rely upon a judicial admission of his adversary, but introduces evidence which has the effect of disproving his case, the party making the admission is not bound by his admission. 31 C.J.S. Evidence, Sec. 381, page 1172; Dressner et al. v. Manhattan Delivery Co., 92 N.Y.S. 800; State ex rel. Richland Parent Teachers' Ass'n v. Board of Education of Richland Township, 6 Ohio Supp. 59, 33 Ohio Law Abstract 387.

But, aside from the foregoing, it is our opinion, considering the issues raised by the pleadings and the subsequent conduct of the parties in trying the issue of beneficial coverage, that by his affirmative answer to the referee's question counsel was merely assenting to the proposition that the issue to be determined was the rights, if any, of claimants under the Workmen's Compensation Act.

In view of our holding that the deceased employee at the time of his injury and death was employed in farm labor, and therefore excluded from the beneficial coverage of the Workmen's Compensation Act, it is unnecessary for us to pass upon the issue of dependency, also raised by appellant in its brief.

The judgment appealed from is reversed. *McCullen* and *Houser*, *JJ.*, concur.