Alice L. NICHOLS, Appellant,

v.

DAVIDSON HOTEL COMPANY, Inc., and Hawkeye Security Insurance Company, Respondents.

No. 7813.

Springfield Court of Appeals.

Missouri.

Feb. 9, 1960.

Neale, Newman, Bradshaw, Freeman & Neale, F. B. Freeman, Donald J. Hoy, Springfield, for appellant.

Louren G. Davidson, Harold J. Fisher, Springfield, for respondents.

McDOWELL, Judge.

This is a proceeding by the widow of George Nichols, deceased, to recover death benefits under the Workmen's Compensation Act, Section 287.010 et seq. RSMo 1949, V.A.M.S. George Nichols, employee of Davidson Hotel Company, Inc., was fatally injured in an automobile collision in Greene County, September 14, 1956.

Claim for compensation was filed by his widow, Alice L. Nichols, before the Division of Workmen's Compensation, against employer, Davidson Hotel Company, Inc., and Hawkeye-Securities Insurance Company, Insurer. The cause was heard before Hon. Leonard E. Newton, December 30, 1957, and award made to claimant in the amount of $8,000. Application for review by the full Commission was filed by employer and insurer on September 23, 1958, where the award was affirmed. From this judgment appeal was prosecuted to the Circuit Court of Greene County, and, on May 8, 1959, the judgment of the full Commission was, by the trial court, reversed. In the court's judgment the following statement was made:

"It is therefore, considered, adjudged and decreed by the Court that the award of the Industrial Commission of Missouri entered on June 18, 1958 be and is hereby reversed by reason that the claimant was involved in the work of a family chauffeur, Sec. 287.090 RSMo 1949 [V.A.M.S.], expressly exempting family chauffeurs from its coverage unless set out as being part of the

employee's duties. No such statement of acceptance appears in this case."

The record shows that the employer, Davidson Hotel, Inc., was on September 14, 1956, operating under the "Workmen's Compensation Act", and its liability under the Missouri Act was fully insured by Hawkeye Security Insurance Company, insurer-respondents herein. It was admitted by respondents that on September 14, 1956, George W. Nichols, deceased, "was a regular employee of the hotel", and, while so employed, was covered by the Workmen's Compensation Act. It was further stipulated that appellant "was a total dependent upon deceased, George W. Nichols," under the Workmen's Compensation law and that the deceased-employee's weekly wage was $40.

The evidence shows that the Davidson Hotel was acquired in 1950 by Thomas E. Davidson and his sons, William A., Emery O., and John T. Davidson, each becoming owners of equal amounts of stock and all were officers and managers thereof. Louren G. Davidson, a brother, was secretary but owned no stock. Thomas E. Davidson was president, William A. Davidson vice-president, and Emery O. Davidson was treasurer.

Deceased, George W. Nichols, had been employed by the corporation since the hotel was acquired in 1950, as a porter, bellhop, general handyman and factotum. At various times during his employment he ran errands and chauffeured for various members of the Davidson family, their respective wives and children. For these errands he was not paid. However, he was not docked on the hotel pay roll while absenting himself from the hotel premises in the performance of duties for the individual corporate owners or their families or while on errands for himself.

Claimant testified that the duties of the deceased were porter, bellhop, desk clerk; that he did some driving for them; that he was their electrician and plumber and did everything else he was capable of doing. She testified he did personal things for members of the family. She gave this answer: "Well, I know he has taken shoes to the shop for Mrs. Lucille Davidson, he has delivered—Well, I don't know just exactly what, but they was out to their home, he has taken some of the children or one that I know of in particular on an outing, he has worked in their homes."

Emery O. Davidson testified that deceased's duties at the hotel were porter, bell-boy and part time clerk; that he did handyman work around the hotel. He stated that on different occasions he performed personal services or errands for his brothers on hotel time, during working hours. He said that was a regular practice in connection with deceased's employment. He was asked if on some occasions prior to his death, deceased had ever taken an automobile that belonged to him or any of his brothers on a trip and answered "Yes". He stated he had furnished deceased a car to go on errands during regular working hours and that his brothers had done likewise but he said deceased very seldom took people as he did in the instant case when he was killed; that deceased had, never to his knowledge, taken anybody in connection with some of his wife's activities anywhere as chauffeur.

John T. Davidson testified that all the compensation deceased received for his work at the hotel was weekly pay of $40.00; that sometimes he got a little time off for his own personal pleasure but received his regular salary. He stated that George had no interest personally in the trip to Lindenlure, the day he met his death. In answer to questions presented by the Referee, he testified:

"Q. He oftentimes went places and took somebody, didn't he, John, for you folks? A. Not very often.

"Q. He done it though before this happened, had he not? A. One other time that I can recall is all.

"Q. Was that the time when he went to the Blair farm? A. That's right.

"Q. Did George perform personal errands for you sometimes? A. Once and awhile, yes.

"Q. Leave the hotel premises during the hours he regularly worked? A. Right.

"Q. And did some for Bill? A. Yes, sir.

"Q. For Emery? A. Yes.

"Q. Or for your wives or families? A. If our wives wanted anything done they would ask us if he had time to do it."

Witness said that George had done things for the families during the regular working hours and while he was off always got his regular pay. On re-direct examination witness explained his answers given to the Referee as follows:

"Q. Now, Mr. Freeman asked you about personal errands during the regular working hours that George may have run for you or one of your brothers, is it not true that those errands were during the regular working hours when he would go someplace, shoe store or some place, and come back to the hotel, be back at work, before he was scheduled to get off work that day? A. Yes, sir."

Witness stated that the trip to the Blair farm was made after work hours when he took witness's son and some of his classmates to a class picnic. He stated it was a hamburger fry and they wanted George to fry the hamburgers; that this trip had nothing to do with the hotel business.

Mrs. Emery O. (Lucille) Davidson was sponsor of Alpha Phi Sorority at Drury College in addition to her other civic and social duties. None of her duties connected her with the operation of the Davidson Hotel. On the day of the fatal accident, George reported for work in the morning as usual. Mrs. Lucille Davidson came down to the hotel to bring the car keys to him and, there, in the presence of her husband, had a conversation with George about the trip to Lindenlure. Deceased was to drive some Alpha Phi rushees from Drury College to a party at Lindenlure and return them thereafter to the college. Mrs. Davidson told him where he was to go and what he was to do. Emery was there and took part in the conversation. He gave this answer: "He was to pick up some Alpha Phi Sorority rushees at McCullough Cottage at one p. m., take them to Lindenlure and I told him if he would take them down and come back that I would go after them. He said that they wouldn't be there long because they was supposed to be back in Springfield at four o'clock and he would just fool around down there in the open spaces and I wouldn't have to go down after them."

Witness stated that the deceased volunteered to stay and bring the girls back. He gave this testimony:

"Q. And, did you agree with that and have that understanding with him at the time that he did leave? A. Yes."

The conversation between deceased and Mr. and Mrs. Davidson took place a little before eleven o'clock a. m. on the day of the accident.

Emery O. Davidson checked the matter of deceased making the trip with his brother, John T., and secured his brother's consent. Deceased left the hotel at 12:30 p. m. to go to his home to get his driver's license, chauffeur's cap and other regalia appropriate to his newly designated duties. He reported to the college at 1:00 o'clock p. m., took the girls to the party at Lindenlure and was killed in an automobile accident while en route on the return trip about 4:00 p. m., at the junction of Highways 125 and 60, about 20 miles from Springfield. The Commission found that all of the aforesaid

events transpired during the regular and usual working hours of the deceased. The testimony as to whether or not this accident occurred during the regular working hours of the deceased at the hotel was highly controverted.

Alice L. Nichols, claimant, testified that she took her husband to work at the Davidson Hotel every morning at 6:00 o'clock and picked him up at the end of his work day at 4:00, except on Sundays. She gave this answer: "He went to work at six o'clock in the mornings and worked until four in the afternoon with the exception of Sunday and he got off between two and three o'clock on Sunday and occasionally he has worked up until four and after."

Emery O. Davidson gave this testimony:

"Q. Now, it has been testified here that George had a regular weekly salary of $40.00 and that he regularly worked each day beginning at six o'clock in the morning and his working day regularly ended at four in the afternoon I believe except on Sunday, well now is that correct or approximately so? A. No, Sundays and Fridays he was off at two and on Monday he was off at three."

Witness testified that deceased worked 65 hours each week.

John T. Davidson testified that he was familiar with the hours George worked at the hotel and stated that starting with Sunday he came to work at 6:00 o'clock in the morning as he did on every working day; that he got off from work on Sunday and Friday at 2:00 o'clock; on Monday at 3:00 o'clock; Tuesday, Wednesday, Thursday and Saturday at 4:00 o'clock. He stated he knew that the testimony given by deceased's wife, claimant, was not correct.

It was further testified by both Emery and John T. that on the fatal day deceased was let off work at the hotel at 12:30 o'clock, p. m.

Under alleged error numbered I, it is urged by appellant that the issues tried before the Referee and the Commission did not include decedent's status as a "family chauffeur". Rather, the Commission considered only limited question of whether or not the accident arose out of and in the course of decedent's employment.

■ The rule of law relied upon is stated in Phillips v. Air Reduction Sales Company, 337 Mo. 587, 85 S.W.2d 551, 559, as follows: "* * * Matters which should have been brought before the commission to make a case or which should have been interposed there as a proper matter of defense cannot be relitigated because the parties neglected to do so or because they have found further evidence bearing on the truth or falsity of the testimony there."

In De Puente v. Chevrolet-St. Louis Division of General Motors, Mo.App., 117 S.W.2d 641, 646 [7–8] this law was declared:

"* * * The record shows that at the first hearing before Referee Lahey, the referee, in the presence of counsel for all parties, read the following statement into the record:

"'Let the record show that the only question at this time is as to the nature and extent of disability as claimed by the employee and which is disputed by the employer.'

"Furthermore, in making its application for a review by the full Commission of the temporary or partial award of December 29, 1936, the appellant made no claim or suggestion that the final receipt should be taken as having disposed of the respondent's claim. On the contrary, that application for a review was based upon the contention that the respondent's condition 'is in no manner related to any accident arising out of or in the course of his employment, but is a simple case of rheumatism or arthritis in no manner related to his employment.' It has been held by our Supreme

Court that matters which should have been brought before the Commission, either to make a case for claimant or which should have been interposed before the Commission as a proper matter of defense, cannot be relitigated because the parties neglected to do so." Citing Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S.W.2d 551.

In Shout v. Gunite Concrete & Construction Co., 226 Mo.App. 388, 41 S.W.2d 629, 631 [7] (a Workmen's Compensation case), the court stated the law: " * * * Suffice it to say they chose to answer, and it was therefore necessary that they state all of the defenses relied upon." Citing Sutton v. Libby, Mo.App., 201 S.W. 615, 617.

In Melvin v. Harrison Engineering & Construction Co., 232 Mo.App. 382, 107 S.W.2d 836, 838 (Workmen's Compensation case), the answer of the employer was a general denial after admitting relation of employer and employee. On appeal from a judgment of the Circuit Court it was contended for the first time that the Workmen's Compensation Commission had no jurisdiction for reason that the project was financed by relief funds carried on by the State and that under provisions of section 3303 (Section 287.090 RSMo 1949, V.A.M.S.) is not covered by Workmen's Compensation. The court stated that this position had not heretofore been taken by the employer and "it is astonishing that such claim is now made for the reason that it is shown by the record, that Arthur Wiebe, who appeared for employer and the insurance company, at the first hearing admitted that employer was working under the Compensation Act and stated as to the employee that, 'He received an accidental injury, we are disputing the extent of the injury.' * * *

"Such question now injected into this case is not only untimely, but frivolous as well."

The same rule of law was declared in Lamkins v. Copper-Clad Malleable Range Corp., Mo.App., 42 S.W.2d 941, 942; and

Schaefer v. Lowell-Krekeler Grocery Co., Mo.App., 49 S.W.2d 209, 211 [3–5].

■ In 100 C.J.S. Workmen's Compensation § 500, p. 445, this law is stated: "A defense which is not pleaded is waived. Thus, it has been held that want of statutory notice or prescription or limitations must be pleaded or defendant cannot avail himself of it."

■ It becomes necessary for us to determine from the whole record, including the pleadings, whether or not it was necessary to plead the limitation contained in the Workmen's Compensation Act exempting family chauffeurs from its provision. In Missouri it has been held that where exceptions to plaintiff's right to recover on statutory cause of action is contained in the same section of the statute which gives right of action, the petition must be so framed as to show that defendant did not come within the exemption; but, if the effect of the statute is to create a general liability, any exception to such liability created in other sections of the statute, or by other statutes, must be inserted by the defendant in his answer. See Mo.Dig., Pleading, ■ Gardner v. Linwedel, Mo.App., 192 S.W.2d 613; Span v. Jackson, Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190; Warren v. American Car & Foundry Co., 327 Mo. 755, 38 S.W.2d 718.

■ Under the above cited law it was necessary that the issue of exemption of "family chauffeurs" be raised by respondents' answer. To determine whether this issue was so raised it is necessary to examine the pleadings.

Plaintiff's claim for compensation, inter alia, alleged: "Deceased was a regular employee of employer whose regular working hours for a weekly salary required him to work daily from 6:00 am to 4:00 pm. On the day of the accident shortly after 12 o'clock noon, he was instructed by the employer to take an automobile of the employer and to drive several college girls to

Lindenlure and to wait for them and return them back home. The highway traffic accident occurred on return trip, which resulted in employee's death."

Respondents, employer and insurer, filed an answer which, in part, denied and admitted as follows: "It is denied that the place of the accident was in Christian County, Missouri. It was in Greene County, Missouri.

"Each and every allegation set out in Paragraph 15 of the claim for compensation is denied. The deceased was not killed by an accident arising out of and in the course of his employment. The deceased, at the time of his death, was not acting in the employment of the employer, although he was a regular employee. At the time of the accident, and prior thereto, he was not on any business of the employer. The deceased was killed in a collision between an automobile owned by Emery O. Davidson and Lucille Davidson, husband and wife, and an automobile driven by T. W. Reaves. The employer had no interest or title whatever in either of said automobiles. The deceased was returning several girls who had been attending a Drury College sorority party at Lindenlure, a resort in Christian County southeast of Springfield, Missouri, to Drury College, Springfield, Missouri."

The cause was tried before the Referee who made additional findings of fact to the effect that from all of the evidence employee sustained an accidental injury September 14, 1956, which arose out of and in the course of his employment with the Davidson Hotel Company, Inc. From this finding and award of the Referee respondents filed application for review before the full Commission and in this application stated that the specific findings appealed from, of which they claim are unwarranted, is as follows:

"4. That above employee was in the employ of above employer at the time of accident.

"5. That the accident arose out of and in the course of the employment.

"6. Employer's election of acceptance of law, as a minor employer, does not cover or include this accident.

"7. Employee's election does not cover or include this accident.

"10. Employee was doing no work for employer at the time of the accident. He was not an employee of employer in traffic accident while returning from Lindenlure.

"22. It is denied that any compensation is payable.

"Appeal is also taken from additional findings of facts and rulings of law as follows, to-wit:

"The finding that, from all the evidence, employee sustained an accidental injury on September 14, 1956, which arose out of and in the course of his employment with the Davidson Hotel Company, Inc., resulting in his death on the same date."

The only issue considered by the full Commission in affirming the judgment of the referee was the question of whether or not employee was engaged in the scope of his employment at the time of his injury and death.

■ The effect of the statute under which plaintiff brought this cause of action was to create a general liability. The exception from the operation of the statute of family chauffeur is contained in another section of the statute and, under the authorities cited, plaintiff did not have to negative such a question in her petition but the duty devolved upon the defendants to affirmatively plead the exemption of family chauffeurs from the Act. Under the authorities above cited, we must sustain appellant's contention that such exemption was not pleaded nor was the cause tried under the theory of such exemption.

It is urged on this appeal that the accident in which George Nichols was killed did not arise out of and in the course of his employment.

It becomes our duty to determine whether the award of the Commission is supported by competent and substantial evidence on the whole record.

In the Commission's findings of fact and conclusions of law it stated:

"In reaching our conclusions we take a look behind the corporate veil. We find that Thomas E. Davidson and his several sons *were* the corporation so far as the deceased was concerned. They were the alter ego of the corporation in law as well as in fact. When Emery O. Davidson, the general manager of the hotel, 'suggested' that the deceased employee chauffeur the girls to the party, deceased was hardly in a position to argue that the trip was an ultra vires act so far as the corporation was concerned. Nor could he insist on a certified copy of the minutes of the board of directors authorizing such a trip. In our industrial society we may take judicial notice that corporate employees who fail to take 'suggestions' made by corporate officers are apt to become ex-employees. This is true notwithstanding the protestations from the witness stand that the deceased would not have been fired or penalized if he would have refused to make the trip. (Tr. p. 49).

"With these considerations in mind, we find and conclude that the injury 'occurred within the period of his employment, at a place where he may reasonably have been, and while he was reasonably fulfilling the duties of his employment or engaged in something incidental thereto.' Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, loc. cit. 423."

█ No all-embracing definition of phrase, "arising out of and in the course of his employment", has yet been framed. Every case involving the phrase should be decided upon its own particular facts and circumstances and not by some formula. Foster v. Aines Farm Dairy Co., Mo.Sup., 263 S.W.2d 421, 423 [4–6].

Our court stated in Heaton v. Ferrell, Mo. App., 325 S.W.2d 800, 803 [2–5]: "The general principles bearing upon proper resolution of the determinative question, to-wit, whether Heaton's injury arose 'out of and in the course of his employment' [Section 287.120 subd. 1, RSMo 1949, V.A.M.S.], have becomes so well settled that they are repeated almost by rote in cases involving that question. An injury arises *out of the employment* when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, and *in the course of the employment* when it occurs within the period of employment, at a place where the employee reasonably may be, and while he reasonably is fulfilling the duties of his employment or is engaged in doing something incidental thereto. But, recognizing the difficulty often encountered in applying broad legal principles to specific factual situations, our courts as frequently have said that no all-embracing definition of the phrase 'arising out of and in the course of his employment' has yet been framed, and have added the common-sense admonition that every case involving the quoted phrase should be decided upon its own particular facts and circumstances and not by formula." (See numerous cases cited as authority for this law in the footnote under [1].)

In Wamhoff v. Wagner Electric Corporation, 354 Mo. 711, 190 S.W.2d 915, 917 [2–4], 161 A.L.R. 1454, the court stated: "In the instant case respondent was injured while engaged in doing an act for his own benefit or pleasure. Unless there is substantial competent evidence to show that, by the conduct of the parties, the activity in which respondent was engaged at the time of injury had become an incident to his employment, he is not entitled to compensation. If there is such evidence we

are bound by the finding of the Commission and must affirm the judgment of the circuit court affirming the award. Further, we must consider the evidence, together with all reasonable inferences to be drawn therefrom, in a light most favorable to support the award. Leilich v. Chevrolet Motor Co. [328 Mo. 112, 40 S.W.2d 601], supra; Hanley v. Carlo Motor Service Co., Mo.App., 130 S.W.2d 187."

On page 919 [8] of 190 S.W.2d, the court stated: "The decisions mentioned in the preceding paragraph and many similar cases generally take the position that the activities of the injured employee, under the particular circumstances, should have been reasonably anticipated and expected by the employer and had become an incident to the employment. In the instant case there is substantial evidence not only that appellant should have anticipated the activities of respondent and other employees in doing private work, but that it encouraged such activities, so long as they did not unduly encroach upon company work. Also, that this was not merely a privilege extended to the employees, but the appellant expected to derive benefit by teaching the employees new methods and thereby improving the quality of their work.

" 'An injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable, for when some advantage to the employer results from the employee's conduct, his act cannot be regarded as purely personal and wholly unrelated to the employment. Accordingly an injury resulting from such an act arises out of and in the course of the employment; and this rule is applicable even though the advantage to the employer is slight.' "

In Finley v. St. Louis Smelting & Refining Co., Mo.Sup., 233 S.W.2d 725, 726 [2] the court stated:

"In this case the respondent was employed to work in the company's mine. He was injured while he was trying to start his automobile at the close of his day's work so that he could return to his home. Therefore, respondent was not injured while performing the work he was employed to do. However, if the facts in this record show that by the conduct of the parties the activity in which respondent was engaged at the time of the injury had become an incident to his employment, then he is entitled to compensation. As said before, the facts are not in dispute. But the respondent is entitled to all reasonable inferences to be drawn from these facts, in a light most favorable to support the award."

On page 727 of this opinion, the court lays down this rule: " * * * Compensation to an injured employee would depend upon whether his activities should have been reasonably anticipated and expected by the employer and had become an incident to the employment." Carriker v. Lindsey, Mo.App., 313 S.W.2d 43, 45.

In Vandeventer v. Melson, Mo.App., 330 S.W.2d 156, 159, the St. Louis Court of Appeals states this law:

" * * * The nature of the work must be determined from the whole character of the work he was required to perform and not simply from a consideration of the particular work he was performing at the time of the injury, nor the place where such work was being performed. Peterson v. Farmer's State Bank [180 Minn. 40, 230 N.W. 124], supra; Blew v. Conner, Mo. Sup., [310 S.W.2d 294], supra; Blew v. Conner, Mo.App. [328 S.W.2d 626], supra. Nor is the sole test the general nature and scope of the employer's business. Plemmons v. Pevely Dairy Co. [Mo.App., 233 S.W.2d 426], supra; * * *

"It is also firmly established that a workman is not a farm laborer simply because the work he is doing at the moment is an incident of farm labor, if such work is a part of his principal employment which is not farm labor. * * * But if the task he is performing is not a duty imposed upon him by his employer in the prosecution of

the business for which he was employed, but is purely agricultural in nature, then he must be held to be a farm laborer. * * *" (See authorities cited.)

We have examined the authorities relied upon by respondents and find that most of such authorities come under the dual employment rule. The facts in the Martensen v. Schutte Lumber Co., 236 Mo.App. 1084, 162 S.W.2d 312, case clearly distinguish that case from the case at bar. We will not quote the facts which are set out on page 315 of 162 S.W.2d but they show that there was employment in a dual capacity and that the decision of the Commission was wrong in holding the Lumber Company liable when the injury sustained was during employment outside the Lumber Company's business.

Respondents rely upon the wording of Section 287.120(1) RSMo 1949, V.A.M.S. which reads: "If both employer and employee have elected to accept the provisions of this chapter, the employer shall be liable irrespective of negligence, to furnish, compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person."

The reading of this statute does not help us materially in the question involved here.

In Schneider on Workmen's Compensation (Perm. Ed.) Vol. 7, p. 371, § 1677, cited, the law stated: " 'It seems clear to us that the (Workmen's Compensation) Act contemplates the insurance of any employer with respect to the business which he is carrying on—not with respect to roving errands wholly disconnected and apart from the business which the employer is conducting and with respect to which he secures compensation insurance. * * * If an insurance carrier is to be held liable for compensation to an employee as the result of an "injury by an accident in the course of his employment" it should at least appear that the injury, if it occurred off the employer's premises, had some connection or was concerned in some manner with the business of the employer whose insurance the carrier undertook. * * * by no stretch of the imagination could it be conceived that its (the carrier's) policy would be extended so as to include an injury received * * * on a family trip undertaken for pleasure and having no relation to or connection with the business of the employed.' "

This same law was declared in Zenker v. Zenker, 93 Pa.Super. 255.

In Larson's Workmen's Compensation Law, Vol. 1, § 27.40, beginning at page 421 this law is stated: "When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.

"Two questions closely related to this one must be distinguished, since they turn upon principles basically different. The first is the question of dual employment. An employee may, as a regular thing, work alternately as a janitor in a printing shop and as a yard man at the employer's residence. The question here is one of dual status, with the possibility of separating the two jobs and holding that one of them is not under compensation coverage. This problem differs from the present problem, in that here the employee is regularly employed at only one job, and the private task is an unusual incident.

"The second question is that of insurance coverage. Both in the 'dual employment' situation just described, and in the private errand cases, the argument may arise that, even if the employer should be held liable, the insurance carrier, for independent reasons having to do with the policy description of the business covered, should not. This argument raises the broader question whether the carrier's liability can be less

than co-extensive with the employer's under the particular statute on insurance policy construction, * * *

"When these two problems are set to one side, the rule on private errands directed by the employer becomes clear, and the cases show a substantial majority in favor of compensability. * * *

"The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?

"The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired."

It will be noted that this last statement quoted was used by the Commission in reaching its final conclusion as to liability.

The authorities outside of Missouri are not in accord as to what constitutes injury "in the course of his employment" as used in the Workmen's Compensation Act. Likewise, Missouri has not passed upon the point directly.

Our court stated in Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 500 [20–21] this law: "We heartily endorse the statutory injunction that the Act 'shall be liberally construed with a view to the public welfare and a substantial compliance therewith shall be sufficient' [Section 287.800]; but, this rule of liberal construction does not authorize allowance of a claim lacking an essential element required by law, nor an award resting only on speculation, surmise and conjecture."

In the instant case deceased was employed by one employer. There is no question of dual employment involved. We agree with the findings of the Commission that Thomas E. Davidson and his three sons were the corporation in law as well as in fact. Whatever the normal course of employment might have been at the hotel, the employer or its owners and managers had within their power to enlarge the duties of the deceased employee by arranging tasks outside the usual area. Emery O. Davidson, general manager of the hotel, requested deceased to make the drive to Lindenlure on the day of his fatal injury. Such request must have been made because of the relationship of employer and employee. It placed deceased in an intolerable dilemma. If he refused he might lose his job, if he complies he will be deprived of compensation. Considering the history of the employment and the continual practice of the managers of the hotel to send deceased on errands for their own private benefit, not only for themselves but for their families, and considering further that each of the members of the hotel permitted the use of their cars in making such errands, it can readily be inferred that these errands were for the benefit of the corporate owners. The errand to Lindenlure was carried out during the working hours of deceased's employment. In fact, his employer benefited from the errand in that he was able to remain at the hotel and work while the errand was being carried out. With these considerations in mind, we conclude that the injury occurred within the period of employment at a place where the deceased may reasonably have been and while he was reasonably fulfilling the duties of his employment or engaged in something incidental thereto. This decision was made by the Commission and we find that it was supported by substantial evidence.

It is ordered that the judgment of the trial court be set aside and judgment entered affirming the award of the Commission.

STONE, P. J., and RUARK, J., concur.