Oliver W. ALBIN (Employee-Plaintiff), Respondent,

v.

HENDRICH BROTHERS IMPLEMENT COMPANY (Employer-Defendant) and Western Casualty and Surety Company (Insurer-Defendant), Appellants.

No. 24045.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Vance Julian, Clinton, for appellants.

Richard K. Houtchens, Clinton, for respondent.

HUNTER, Judge.

Claimant-respondent, Oliver W. Albin, was injured while operating a combine machine in the course of his employment by defendant-appellant, Hendrich Brothers Implement Company. Western Casualty and Surety Company is the insurer and co-defendant.

The sole question is whether claimant at the time of his injury was in an employment of farm labor within the meaning of that term as used in Section 287.090 RSMo 1959, V.A.M.S. If so, he is not covered by the provisions of the Workmen's Compensation Act, for it is agreed that his employer is a minor employer who had not accepted the otherwise exempted "employments of farm labor" under the act and the insurer's policy did not cover employments of farm labor.

As a result of the hearing of the compensation claim before the referee, claimant was found not to be a farm laborer and was awarded compensation benefits then totaling $5,409.30. The Industrial Commission made the same final award, and the Circuit Court of Henry County affirmed. This appeal followed.

On review of questions of fact decided by the Industrial Commission, our inquiry and that of the Circuit Court is limited to whether or not the findings of the Commission are supported by competent and substantial evidence upon the whole record. V.A.M.S.Const., Article V, Sec. 22. The reviewing court may not substitute its own judgment on the evidence for that of the administrative tribunal, but it is authorized to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it. The reviewing court will set aside decisions clearly con-

trary to the overwhelming weight of the evidence.

In accordance with the above rules we review and summarize for the reader the pertinent evidence. Hendrich Brothers Implement Company, a partnership, since 1956 has been a dealer in farm implements selling Allis Chalmers products. The company also engages in the repair of these farm implements and the sale of parts. As a part of its business operation it demonstrates Allis Chalmers farm implements to interested farmers. In October, 1962, the company employed claimant, a twenty-five year old man who was experienced as a mechanic and who was familiar with farm machinery, as a full time, permanent employee to do the "general work of (a) farm implement store or farm machinery dealership" including assembling or setting up new machinery, repair work and assisting in demonstrating farm implements and delivering them to purchasers. Claimant was paid $2.00 an hour when operating a machine in the field and a little less when he was doing other work. The company's place of business was located in Clinton, Missouri.

James F. Middleton operated a 678 acre farm near Clinton, including a 70 acre tract planted in corn. Middleton had employed a man to pick the corn from this field but the field was wet and had some mud holes in it, preventing this man from picking an unspecified portion of it. Middleton had heard from others that the implement company's Allis Chalmers corn picking machine worked satisfactorily in muddy fields, and he sent word to Mr. Hendrich that he wanted to see him and arrange a demonstration. They met about ten days prior to November 21, 1962. According to Witness Middleton, "There was a lot of wet bottoms up there and there was quite a bit of talk about this gleaner combine being able to pick corn in that mud, or shell corn. It was a self-propelled combine with a corn header on it. And I just didn't think it would get over the ground, and I kidded

Jim (Hendrich) a little bit about it. And I said I would just like to have a demonstration; I would just like to see it go. Well, he said there is a lot of people would like to have a demonstration and he said a lot of times I find out it's just an excuse to get their corn picked. And I said, 'I'm really interested in the machine.' I said, 'You bring it out there and show me that it will do the job, and if I don't buy a combine, I will pay you for your trouble.' Q. Relative to that request, did Mr. Hendrichs inform you or make any statement that he would send the machine out or bring the machine out? A. Yes, but he didn't promise me exactly when. Q. Did you have any understanding with him at that time as to how much you would pay if you didn't buy a machine? A. No, sir. Q. Did you inform him that if you bought a machine, that your corn was picked and that you didn't need one till this year, this fall of 1963? A. That's right. Q. Your demonstration then, as I understand it, was back last fall for the purpose of seeing whether or not you wanted to purchase a gleaner combine this coming fall of 1963? A. Yes, sir." * * * "The machine that come out there was a used machine. Q. You wanted a machine like it, but a new one? A. That's right."

According to Mr. Hendrich when Middleton contacted him, "He asked me if I would show him my machine up in his mud and water conditions, and I told him that I didn't know when I could get there or whether I could or not, but if it worked out that I might be able to get up there and show it to him. It so happened that Mr. Houk contacted me and wanted me to show him the machine, and at that point I wasn't possibly more than seven miles from Mr. Middleton's place, so I decided I would move on up there and show it to him. I made a demonstration at Mr. Houk's and then later sold him a machine, and the same day we moved on to Mr. Middleton's. Q. Did Mr. Middleton—did you quote him any price for combining? A. No, sir. Q. Did he make an offer to you relative to the demonstration? A. He just said he would

make it right with me. Q. If you would come and demonstrate in this mud bottom? A. That's right. Q. Did he make any statement that if he did not buy the machine, he would be willing to pay what was right? A. That's right."

\*  \*  \*  \*  \*  \*

"Q. What was the purpose you went to the Middleton farm for? A. The purpose was to show him the machine because of the conditions. I wouldn't have taken my combine and moved it that far for that small an amount of work in any sense other than a demonstration, because the mud conditions were so adverse that at one time we had to dig our combine out twice before we could even move it. The consistency of the soil was so that it would build up on the wheels to such an extent that it would go out on each side and push into the belts. Q. Was there any understanding between you and Mr. Middleton that if he bought a machine in the fall of 1963 that he would not have too pay for this demonstration? A. That is correct."

The morning of November 21, 1962, Mr. Hendrich, with Mr. Middleton seated beside him, demonstrated the machine for about three hours by operating it in the mentioned cornfield. They picked somewhere between 200 and 1500 bushels of corn. Hendrich then turned the machine over to claimant with instructions to continue operating it "where we was at". From a high hill nearby Middleton continued to watch claimant from time to time as claimant finished filling with corn a wagon set there by Middleton, and Middleton, took that wagonload up the hill and put it in his bin. Middleton then went to his house for a cup of coffee and soon claimant showed up with a mangled hand. He had gotten off the combine to scrape mud off a belt and the combine had "jumped into gear" catching and cutting his hand. This occurred about an hour after claimant had taken over the machine.

Later Hendrich billed Middleton $100.00 for the demonstration. When questioned about his policy concerning demonstrations Hendrich stated, "It's all in the line of selling machinery; it is debatable whether you ever get enough money to pay the depreciation on the machine and the expenses. You just have to reap it through sales, if you come out ahead, but you sure don't sell anything unless people know what you have." \* \* \* "Q. Do you, as a part of your business, and a custom in your business, place your machine out over these areas for the purpose of demonstrations to take people and see them work and for other people other than the farm on which they are being worked? A. Yes, sir, that's certainly right. \* \* \* Q. Is is a necessary part of your business and considered a business practice to do the type of work you have just testified to as good will and demonstration to help sell your product? A. I think so. It certainly has paid off in the way of sales."

There was other evidence that Hendrich in demonstrating his combine to some four or five farmers on other occasions had done some combining and had charged for the "demonstrations". He used claimant some during such "demonstrations." Hendrich denied he ever did complete a field on any farm. He had never run an ad or solicited combining work. "Q. Now forgetting all of these other farms that you did work on last fall, was the work that you did on the Middleton farm a demonstration at his request, or was it work for hire or custom work? A. It was a demonstration at his request. I wouldn't go back in that condition again for any kind of pay."

■ In construing the provisions of the Workmen's Compensation Act to ascertain the legislative intent, the required approach is stated in Dost v. Pevely Dairy Company, Mo.Sup., 273 S.W.2d 242, 244, "Sec. 287.-800 states that the provisions of the Workmen's Compensation Act shall be liberally construed with a view to the public welfare. This has been interpreted to mean that the

Act should be construed 'with a liberality caculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class.' Hilse v. Cameron, Joyce Construction Co., Mo.App., 194 S.W. 2d 760, 765; Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S.W.2d 1046."

■ Numerous appellate court decisions of this and other states have established the rule that the character of employment of an employee must be determined from the whole character of his employment and not by the particular work he is performing at the time of his injury, nor by the place where such work is performed, nor by the nature and scope of his employer's business. Blew v. Conner, Mo.Sup., 328 S.W.2d 626; Davis v. McKinney, Mo.App., 303 S.W.2d 189; Dost v. Pevely Dairy Co., Mo.Sup., 273 S.W.2d 242; McCaleb v. Greer, 241 Mo.App. 736, 267 S.W.2d 54.

■ Thus, it is firmly established by judicial decision that a workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged when injured is sometimes performed by a farm laborer.

As approvingly stated in Blew v. Conner, supra, 328 S.W.2d loc. cit. 629, "* * * a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings. Neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer and the other does not become one." And, see, I Larson's Workmen's Compensation Law, Section 53.40, pages 782–783.

■■ In the instant case the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, viewed in the light most favorable to the findings and award of the Industrial Commission as we are required to do on an appeal, support its finding that claimant was not in an employment of farm labor at the time he was injured.

■ Claimant was employed as a full-time worker by the farm implement company to work at its place of business in Clinton. His work included assembling and setting up new farm machinery, repair work such as any mechanic might perform and assisting in demonstrating farm implements to potential purchasers. It was an employment within the coverage of the Workmen's Compensation Act.

Although corn picking performed by a farm hand as a part of his duties is considered to be an employment of farm labor, corn picking when merely an incident of a demonstration of a farm machine by a farm implement dealer's employee to a potential purchaser of the machine is not an employment of farm labor. A workman is not a farm laborer simply because the work he is doing at the moment may be labor on a farm if such work is a part of his principal employment which is not farm labor.

■ The demonstrating of farm implements is inherently a part of the usual business operation of a farm implement dealer and his employees. While the farmer whose field is being worked as a part of a demonstration of farm equipment may be benefited by having a part of his crop gathered or processed, so long as the purpose of the work performed by the implement dealer and his employees is a bona fide demonstration of the equipment to a potential purchaser, the demonstration, even though including a token or small charge to offset depreciation or the actual expense of the demonstration, does not result in a participating employee of the dealer being in an employment of farm labor.

■ It would be otherwise if the farm implement dealer was also engaged in the work of field harvesting for a profit and not for the purpose of a bona fide demonstration of his farm machinery to a potential purchaser. Under some circumstances and

conditions an employee may work in a dual capacity and be covered by the Act when engaged in one capacity and excluded when engaged in another, depending on the nature of the work being performed at the time of the injury. Vandeventer v. Melson's Service Station, Mo.App., 330 S.W.2d 156. However, there is competent and substantial evidence to support the Industrial Commission's view that such is not the situation here and that the employment was that of an employee of an implement dealer engaging in a demonstration of a farm machine at the direction of his employer and remained such at the time of his injury. Every case must be decided on its own facts and circumstances.

The judgment of the circuit court affirming the final award of the Industrial Commission is affirmed.

All concur.