Charles L. **TYRA,** Respondent,

v.

**DELTA VETERINARY CLINIC, INC.,** Appellant.

No. 13968.

Missouri Court of Appeals, Southern District.

Division Three.

March 11, 1985.

Motion for Rehearing or Transfer Denied March 22, 1985.

Bruce Lawrence, Potashnick & Lawrence, Sikeston, for appellant.

Joseph P. Fuchs, Dempster, Fuchs & Barkett, Sikeston, for respondent.

CROW, Presiding Judge.

Delta Veterinary Clinic, Inc. ("DVC"), a corporation, appeals per § 287.495, RSMo Cum.Supp.1984, from an award of the Labor and Industrial Relations Commission ("Commission") affirming an award of an administrative law judge ("judge") of the Division of Workers' Compensation. The

award granted benefits under chapter 287, RSMo 1978, as amended ("The Workers' Compensation Law," § 287.010, Laws 1980, p. 361) to Charles L. Tyra ("claimant") for a back injury found by the Commission to have arisen out of and in the course of claimant's employment by DVC.

DVC maintains the Commission erred in finding that claimant's injury arose out of and in the course of his employment, insisting that at the time the injury occurred, claimant was not performing duties for DVC, but was instead engaged in a chore for the "personal benefit" of two individuals, David Morris and David's wife, Nanette. They are more fully introduced *infra.* DVC also contends the Commission erred in ruling that claimant's injury did not occur while claimant was engaged in "exempt farm labor." § 287.090.1(1), Laws 1981, p. 400.

DVC does not attack the Commission's finding as to the extent of claimant's disability, nor does DVC question the amount of compensation awarded.

DVC operates a clinic near Sikeston at which David Morris, a "practicing veterinarian," practices his profession. Claimant, in his brief, asserts that DVC is "solely owned" by David and Nanette Morris. DVC's reply brief states that David Morris, individually, owns DVC. Although we find nothing in the record substantiating either allegation, it is evident—and the judge found—that David Morris, at all times pertinent herein, was "chief operating officer" of DVC.

The injury whence this dispute arose occurred February 10, 1982. At that time, claimant had been in the employ of DVC for several weeks. David Morris explained claimant's duties thusly:

"He was a veterinary assistant, which a small practice like mine incorporates a number of duties, anywhere from the routine cleaning of the office area to the kennel rooms to the preparation of surgery packs, assisting in surgery. Charles was as good as and excellent in assisting in surgery as any employee I had. Assisting in helping holding ani-mals, duties of watching those animals that were in the clinic. By watching, general observation. And in the process of feeding and watering, if he noticed anything wrong, if the animal would eat or not eat, those type of observations."

David and Nanette Morris, at all times pertinent herein, owned a farm near Scopus in Bollinger County, about 50 miles northwest of Sikeston. Cattle owned by the Morrises were kept at the farm. David Morris, on the morning of February 10, 1982, directed claimant to go to the farm and feed the cattle, using David's "Scout," a four-wheel drive truck, for transportation.

Claimant departed about 9:00 a.m., accompanied by his brother-in-law, Frankie Brown. En route, they stopped in Jackson and picked up cattle feed, which they hauled to the farm in a trailer hooked to the Scout.

Reaching the farm around noon, claimant and Brown began unloading the feed, which was packaged in 50-pound bags. During that process a bag slipped from claimant's grasp, and as he "jerked and tried to catch it," his back "snapped." This caused pain that prevented claimant from working further. He sat in the Scout while Brown completed the task.

Afterward, Brown drove claimant to claimant's home in Sikeston, reaching there around 3:30 p.m., or later. Claimant telephoned the clinic, informing David Morris' secretary of the injury and explaining that Brown was returning the Scout.

Claimant eventually underwent spinal surgery necessitated by the injury. As DVC raises no issue about the degree of claimant's disability or the amount of his medical expenses, evidence regarding those elements need not be summarized.

DVC argues, in its first point, that the work claimant was doing at the Morrises' farm at the time claimant was injured was not a duty within the scope of his employment by DVC. Emphasizing that it owned neither the farm nor the cattle and that claimant was not at the farm administering

any "veterinary aid," DVC argues that claimant's injury did not occur at a place where his employment by DVC required him to be and that claimant's mission was for the personal benefit of "third persons," not DVC. DVC points out that claimant, in times past, had gone to the farm with his children for recreational purposes and that, had claimant been injured on such a visit, he would have had no workers' compensation claim against DVC.

In considering DVC's argument, we note that claimant had no financial interest in the cattle, thus feeding them on February 10 was of no economic benefit to him. It is also evident that claimant was not at the farm on that date for recreation. He was there because he had been ordered there by David Morris, chief operating officer of DVC, to feed cattle owned by Morris and his wife.

Additionally, this was not the first instance where claimant had been ordered to the farm to feed the cattle. Claimant testified, without contradiction by David Morris, that during his employment by DVC he had fed the cattle several times. DVC paid claimant for his work on February 10 and for all of the earlier feedings. It is also noteworthy, as the judge astutely observed, that DVC benefited from claimant's feeding of the cattle, inasmuch as David Morris was thereby free to perform profitable veterinary services at the clinic, which Morris would have been unable to perform had he been at the farm tending the cattle.

Our role in reviewing the Commission's decision is clearly defined. We are constitutionally bound to determine whether it is authorized by law and whether it is supported by competent and substantial evidence upon the whole record. Mo. Const. art. V, § 18. Specifically, § 287.495, RSMo Cum.Supp.1984, provides, in pertinent part:

"1. ... Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

■ Additionally, it is well settled that we must view the evidence, with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commission's award. *Lieneke v. Evangelical Deaconess Hospital*, 418 S.W.2d 142, 145[4] (Mo.1967); *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 296[3] (Mo.1965). The Commission is the sole judge of the credibility of the witnesses and the weight and value of the evidence. *Ricks v. H.K. Porter, Inc.*, 439 S.W.2d 164, 167[5] (Mo.1969); *Welborn v. Southern Equipment Co.*, 395 S.W.2d 119, 125–26[7] (Mo.banc 1965).

The pivotal issue in DVC's first assignment of error is whether the evidence, measured by the above standards, is sufficient to support the Commission's determination that claimant's injury—indisputably accidental—arose "out of and in the course of his employment" by DVC. § 287.120.1, RSMo 1978. On that issue, we find guidance in *Nichols v. Davidson Hotel Co.*, 333 S.W.2d 536 (Mo.App.1960), a workers' compensation case strikingly similar to this one.

In *Nichols*, a hotel was owned by a corporation. Shares in the corporation were owned in equal amounts by a father and three of his sons. A hotel employee, whose customary duties were those of "porter, bellhop, general handyman and factotum," was occasionally assigned personal errands, including chauffeuring, for various members of the shareholders' families. These tasks were performed during the employee's working hours, for which he was paid by the corporation. The employ-

ee was killed in an automobile accident during one such mission, which came about under the following circumstances.

The wife of one of the shareholders was sponsor of a college sorority. She came to the hotel and, in the presence of her husband (treasurer of the corporation), asked the employee to drive some sorority rushees from the campus to a party more than 20 miles away. The treasurer obtained the consent of one of his shareholder-brothers, and the employee was furnished an automobile for the journey. The employee thereupon departed, fetched his driver's license and chauffeur's cap, picked up his passengers and delivered them to the appointed destination. During the return trip a few hours later, the fatal accident occurred.

The corporation argued (as does DVC in the instant case) that the employee's death did not arise "out of and in the course of his employment," § 287.120.1, RSMo 1949. Rejecting that contention, the Court, citing *Foster v. Aines Farm Dairy Co.*, 263 S.W.2d 421, 423[4–6] (Mo.1953), stated that no all-embracing definition of the phrase "arising out of and in the course of his employment" had yet been framed. Every case involving the phrase must be decided upon its own particular facts and circumstances and not by some formula. *Nichols*, 333 S.W.2d at 543[6]. The opinion further pointed out that whatever the normal course of employment might have been at the hotel, the owners and managers had it within their power to enlarge the employee's duties by arranging tasks outside the usual area. *Id.* at 546. Noting (1) the continual practice of sending the employee on errands for the private benefit of the shareholders and their families during the employee's working hours, (2) the employer benefited in that the owners were able to remain at the hotel while the employee ran their errands, and (3) the fatal errand was assigned and undertaken during the employee's working hours while he was being paid by the corporation, the Court concluded that the fatality occurred within the period of employment at a place where it was reasonable for the employee to be and while he was reasonably fulfilling the duties of his employment or engaged in activity incidental thereto. *Id.* The Court upheld the Commission's decision awarding death benefits to the employee's widow.

If the evidence in *Nichols* was sufficient to support the Commission's finding that the accident there arose out of and in the course of the employee's employment, we are satisfied that the evidence in the record before us is likewise sufficient to support such a finding.

■ Claimant, on the occasion in question, was ordered by David Morris, the chief operating officer of DVC, to go to the Morrises' farm and feed the cattle, the same duty claimant had been assigned several previous times. The task was to be performed during the hours that claimant was working for, and being paid by, DVC— an arrangement consistent with past practices. Claimant, at the time he was injured, was exactly where he had been ordered to be, doing precisely what he had been directed to do. His efforts, like those of the employee in *Nichols*, benefited the employer in that, as earlier noted, David Morris was able to avoid going to the farm and was free instead to remain at the clinic.

Bearing in mind that the question for us to determine under DVC's first point is whether the Commission's finding that claimant's injury arose out of and in the course of his employment by DVC is supported by competent and substantial evidence, and not whether a decision adverse to claimant on that issue would have had sufficient evidentiary support, *Karch v. Empire District Electric Co.*, 358 Mo. 1062, 218 S.W.2d 765, 770 (1949); *Davis v. McKinney*, 303 S.W.2d 189, 193 (Mo.App. 1957), we hold, on the authority of *Nichols*, that the evidence is sufficient to sustain the finding of the Commission. DVC's first point is, accordingly, denied.

DVC's second point asserts that even if we uphold the Commission's finding that claimant's injury arose out of and in the course of his employment, claimant is nonetheless ineligible for workers' compensa-

tion benefits because the work he was doing at the time of his injury was "farm labor," to which The Workers' Compensation Law does not apply. § 287.090.1(1), Laws 1981, p. 400.

The principal case relied on by DVC in support of this contention is *Vandeventer v. Melson*, 330 S.W.2d 156 (Mo.App.1959). There, the employer, who operated a service station, hired an employee to service, grease and wash automobiles. Besides the service station, the employer owned and operated a farm. The employer assigned the employee numerous tasks unconnected with the service station, including cleaning a furnace at the employer's home on the farm, delivering straw from the farm to the home of the employer's mother and spreading it on her garden, helping move furniture, mowing grass at a school where the employer was a director, mowing the employer's lawn, feeding hogs on the farm, capturing cattle that had escaped through a fence, picking corn, plowing, planting and hauling water. The employee received weekly wages which continued while he was working on the farm.

It was an injury on the farm that gave rise to the dispute in *Vandeventer*. The employee had been sent to the farm by the employer for the purpose of picking corn with a corn picker. When the employee was about to begin, he noticed it would be necessary to adjust a part on the picker. As he attempted to do so, a glove on one of his hands was caught in the shucking rollers and the hand was pulled into them, resulting in amputation of part of one finger and injury to another.

■■■■ *Vandeventer* recites several well-established principles of law, equally applicable there and here. An employee may work in a dual capacity and be covered by the workers' compensation law when engaged in one capacity and excluded when engaged in another, such as farm work, depending upon the nature of the work being performed at the time of the injury. 330 S.W.2d at 159[1]. The nature of the work must be determined from the whole character of the work the employee is re-

quired to perform and not simply from a consideration of the particular work he was performing at the time of the injury, nor the place where such work was being performed. *Id.* at 159[2]. Nor is the sole test the general nature and scope of the employer's business. *Id.* at 159–60. A workman is not a farm laborer simply because the work he is doing at the moment is an incident of farm labor, if such work is a part of his principal employment which is not farm labor. *Id.* at 160[3]. But if the task he is performing is not a duty imposed upon him by his employer in the prosecution of the business for which he was employed, but is purely agricultural in nature, then he must be held to be a farm laborer. *Id.*

*Vandeventer* upheld a decision by the Commission that the employee was engaged in "strictly farming operations" at the time of the injury and was therefore ineligible for workers' compensation benefits.

Though seemingly identical with the instant case on initial comparison, *Vandeventer*, in our opinion, is, upon reflection, not truly so.

In the case before us, claimant was not engaged in feeding the Morrises' cattle at the time of his injury. A close examination of the record discloses that instead, claimant and Brown were unloading feed and storing it in a building. Brown testified:

"A ... We were unloading the two-wheel trailer and we had backed in where there was a house where he was storing hay in. He'd made, you know, a barn out of it. We had the trailer backed all the way up. We were almost to the bottom of the pile and Charlie grabbed a sack of feed.

Q Where were you?

A Well, I was in the little window. He was giving me the feed and I was stacking it.

Q Okay. He was handing it to you out of the trailer and you were stacking it.

A Yes, sir.

Q Okay. And what happened?

A Charlie went to pick it up and it slipped, and when it slipped he jerked his back and he fell down.

A And what happened then?

Q Well, I got down from the barn and helped Charlie out of the trailer."

It is clear from Brown's testimony that no cattle were being fed while the feed was being unloaded. Brown was in the storage building and claimant was in the trailer, handing the bags to Brown who was stacking them inside.

Had claimant been employed as a deliveryman by a farm supply company, and had he sustained injury while unloading feed in the course of such employment, it could hardly be contended that he was injured while performing farm labor. Conversely, had claimant been employed as a farmhand, and had he sustained injury while unloading feed for use on the farm where employed, it would be difficult to argue that he was not injured while performing farm labor. As observed in *Blew v. Conner*, 328 S.W.2d 626, 629 (Mo. banc 1959), a farm laborer does not step out of his own part while doing carpenter work for his farmer employer in the repair of farm buildings; neither does the carpenter who comes onto the farm for the job of carpentry and nothing more. One continues a farm laborer, and the other does not become one.

The same rationale was applied in *Albin v. Hendrich Brothers Implement Co.*, 382 S.W.2d 734 (Mo.App.1964), where an employee of a farm implement dealer sustained a hand injury while operating a corn picker owned by the dealer. The injury occurred on the farm of a potential customer, to whom the employee was demonstrating the operation of the picker. In affirming an award by the Commission of workers' compensation benefits to the employee, the opinion points out that while corn picking performed by a farmhand as a part of his duties is considered to be an employment of farm labor, corn picking when merely an incident of a demonstration of a farm machine by a farm implement dealer's

employee to a potential purchaser of the machine is not an employment of farm labor. 382 S.W.2d at 739. A workman is not a farm laborer simply because the work he is doing at the moment may be labor on a farm if such work is a part of his principal employment which is not farm labor. *Id.*

■ In the instant case the pivotal issue in DVC's second assignment of error is whether, given the general character of claimant's employment as a *veterinary assistant*, there is sufficient evidence to support the Commission's finding that in unloading and storing cattle feed on the Morrises' farm, claimant was not engaged in performing farm labor.

As best we can determine from the record, claimant had been employed by DVC for a period between 6 and 10 weeks prior to his injury. Asked how frequently David Morris had sent him to the Morrises' farm during that interval, claimant replied: "I believe I was going like one time a week. In bad weather maybe twice a week."

It is thus evident that although delivering feed to the Morrises' farm and feeding their cattle were duties incidental to claimant's employment by DVC, claimant was not hired by DVC as a farmhand.

Bearing in mind that at the time of his injury, claimant was not feeding cattle, but was unloading and storing feed, which may or may not constitute farm labor depending on the whole character of the employment of the worker engaged therein, and that by assigning claimant that task, David Morris was free to remain at the clinic, we cannot say that the Commission's finding that claimant, when injured, was not engaged in farm labor lacks substantial evidentiary support.

We emphasize that we need not, and do not, decide whether the Commission's award could be sustained if claimant had been feeding the Morrises' cattle at the time the injury occurred.

DVC's second point, albeit extremely close, is denied.

The Commission's award is affirmed.

PREWITT, C.J., and FLANIGAN and MAUS, JJ., concur.

TITUS, J., dubitante.