Haywood PALMER, Appellant,

v.

H.E. MILLER OLDSMOBILE,
INC., Respondent.

No. WD 38828.

Missouri Court of Appeals,
Western District.

April 28, 1987.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
June 2, 1987.

Application to Transfer Denied
July 14, 1987.

Mike Holzknecht, Kansas City, for appellant.

Truman K. Eldridge, Jr., J. Ealene Farr, Dietrich, Davis, Dicus, Rowlands, Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Appellant appeals an adverse decision of the Labor and Industrial Relations Commission. Appellant raises four (4) points on appeal. This court affirms.

Appellant has worked as a porter and car polisher for thirty or forty years. Appellant went to work for respondent, H. E. Miller Oldsmobile, cleaning up new cars and getting them ready for customers. Appellant worked a five day week, eight hours per day, and half-day every Saturday. Appellant testified he often worked after he had "clocked out," usually washing and getting a car ready that was just sold. Appellant drove his own car to and from work and parked on the street behind H. E. Miller Oldsmobile.

Several days prior to October 10, 1984, appellant drove his Mercury Montego automobile to work and parked it as usual behind H. E. Miller Oldsmobile on Buchannan street. After work he drove to a nearby service station for gas. When he got ready to leave, his car would not start. A fellow employee was present at the gas station and helped appellant push his car back to Buchannan street behind H. E.

Miller Oldsmobile. There the car sat for several days.

Alfred Horak, service manager of H. E. Miller Oldsmobile asked appellant to move his car as it was hazardous, being on a jack, and unsightly. James Arteese, general sales manager, also asked appellant to move his car. Arteese told appellant, "Haywood, I wish you would get that car out of there because that old man (H. E. Miller) is griping my butt." Appellant testified that the next day he arranged for a mechanic, Clem Nathan, to come and repair the car. He told Clem Nathan to "[b]ring Head so he can drive one of them [cars] back."

The afternoon of October 10, 1984, Clem arrived on the scene and was repairing the car when appellant checked out and went to the car. That day appellant timed in at 8:10 a.m. and out at 4:33 p.m.

The following testimony of the appellant is recounted to permit the reader an opportunity to read exactly how the accident occurred:

Q. Now, after you—when you went into the service building, did you clock out then?

A. Yes.

Q. And immediately you came out to the car, is that correct?

A. Yes.

And what happened then?

A. I walked up to the car and the engine was running and that's when it happened, whatever happened, and this blood went everywhere.

Q. Pardon?

A. Then blood just flew all over everything. I just walked up to the car on the left-hand side.

Q. You were on the left-hand side of the car?

A. Yes.

Q. Near the front?

A. Yes.

Q. And what happened after the blood had gone everywhere?

A. I turned right around and walked back into the shop and I stood over the drain. And someone ran, Willie ran in and called the paramedics. I just stood in the drain and let the blood run. And one of the white kids came and tied up my arm with a belt.

The following was elicited from appellant by the court:

THE WITNESS: Well, I walked over to the car and the engine was running on the car. It was already running.

THE COURT: Was the hood up?

THE WITNESS: Yes.

THE COURT: All right.

THE WITNESS: And so something flew from the engine and hit the hand. Now, that's all I know.

THE COURT: Where you bending over the engine?

THE WITNESS: No. I was just standing and just walking up. Never did get to the car completely, maybe two foot.

THE COURT: You were standing by the left side of the car on the driver's side?

THE WITNESS: Yes.

THE COURT: And something flew from the engine and hit your hand?

THE WITNESS: Yes.

THE COURT: And it started bleeding?

THE WITNESS: Yes.

THE COURT: Then you went over to the service department, is that right?

THE WITNESS: Yes.

THE COURT: And they took you to the hospital from there?

THE WITNESS: Yes.

THE COURT: All right. Now, I am not going to ask any more questions. I had to ask those because I failed to hear exactly what happened. But in view of my questions, do either of you have any further questions?

On cross examination appellant testified:

Q. Mr. Palmer, do you have any reason to suspect that it was a piece of a fan blade of the car that had broken loose and cut you on the hand?

A. Well, now, I didn't really expect anything because I didn't know what actually happened. Is when it hit me, I just walked back and like I told you, one

of the guys came out and put a belt around my arm and took me to the hospital. And I didn't go back over there until JoAnn called me to come over and sign these papers and I haven't seen them since. And they haven't bothered to call me or ask me about anything.

Q. Mr. Palmer, since that time, do you know whether or not your car has undergone an inspection to see if anyone could figure out what may have cut you on the wrist?

A. Well, we were going to because I have the car. I just put the car in the garage and I am driving the other car.

Q. Has anyone looked at the fan blade since the time of the accident?

A. I think so, but I haven't.

Q. Do you know whether or not there was a piece of the fan blade that was broken or sheered off—

A. No, I don't know. I didn't never know exactly what happened.

Q. So, your testimony today is that you were just standing by your car and something hit your hand and you don't know what it was.

A. I just walked up to the car.

Q. Do you know whether it came off the car or even if it came off the car?

A. Yes. It had to came off the car.

Q. Can you tell me why you think it had to come off the car?

A. There was nothing else there.

Q. But did you see it come from the car?

A. I haven't never see anything.

Q. So, you are just stating you were by the car when you were struck in the hand, is that correct?

A. I was struck in the hand, yes.

Q. And did you see anything coming from the car?

A. No, I didn't see anything.

Q. So, do you have knowledge that something struck you from the car other than just being by the car?

A. Yes, I have knowledge. Yes.

Q. Can you tell me what that knowledge is, Mr. Palmer?

A. The knowledge that I know it flew from the engine.

Q. Did you see it fly from the engine?

A. No.

Appellant was transported to the North Kansas City Hospital after the accident where he stayed one day and one night. As a result of this accident appellant sustained permanent partial impairment to the function of his right upper extremity taken at the level of his wrist of ninety percent.

Appellant raises four points of error in that the Commission erred: (1) in finding the injury did not arise out of and in the course of his employment; (2) in finding that there was no benefit to employer for appellant to move his car; (3) in failing to award workers' compensation benefits to an employee who was injured while attempting to benefit his master even though he was off the clock; and (4) by admitting evidence of the North Kansas City Municipal Code over objection that had been sustained.

Each workman's compensation case involving the question of whether or not the injury complained of arose out of the employment must be considered and decided upon its own peculiar facts and circumstances. *Finley v. St. Louis Smelting & Refining Co.*, 361 Mo. 142, 233 S.W.2d 725, 726 (Mo. banc 1950). The court may not substitute its judgment on the evidence for that judgment exercised by the Industrial Relations Commission. The court may only decide if the Commission could have reasonably reached its finding or result considering all the evidence before it. Only upon a showing that the Industrial Relations Commission findings and decision is clearly contrary to the overwhelming weight of the evidence may the court set aside the Industrial Relations Commission's decision. *Kammeyer v. Board of Education*, 393 S.W.2d 122, 128 (Mo.App.1965). The court must view the evidence and all reasonable inferences in the light most favorable to the Commission's award. *Tyra v. Delta Veterinary Clinic*, 687 S.W.2d 931, 934 (Mo.App.1985).

That the appellant sustained an injury on October 10, 1984, is not disputed, although

the testimony is anything but clear as to how the injury occurred. The appellant has the burden of proving the accident arose out of and in the course of his employment. *Kammeyer v. Board of Education, supra,* 393 S.W.2d at 127. The appellant's injury must be tested against the well established "out of" and "in the course of" tests for compensability. *Bybee v. Ozark Airlines,* 706 S.W.2d 570, 572–573 (Mo.App.1986).

■ In the instant case, the appellant's job duties were washing cars, getting new cars ready for delivery, janitorial work, picking up customers and running errands. His employment duties did not include repairing his own car or watching it be repaired. Thus, it cannot be said the accident arose "out of" the employment. *Ford v. Bi-State Development Agency,* 677 S.W.2d 899, 901 (Mo.App.1984). In *Blatter v. Missouri Dept. of Social Services, Div. of Aging,* 655 S.W. 819, 823 (Mo.App.1983), the court held an injury arises "out of" employment if it is the "natural and reasonable incident of the employment" and is rationally a consequence of some job hazard. An injury "in the course of" the employment occurs if it is within the period of employment at a place the employee may reasonably be while he is reasonably fulfilling his employment duties. The Administrative Law Judge found the appellant injuries did not arise out of or in the course of his employment. The cases cited by appellant, *Blatter v. Missouri Dept. of Social Services, Div. of Aging, supra; Page v. Green,* 686 S.W.2d 528 (Mo.App.1985); *Yaffe v. St. Louis Children's Hospital,* 648 S.W.2d 549 (Mo.App.1982), *Bybee v. Ozark Airlines, supra; Tyra v. Delta Veterinary Clinic, supra,* and *Nichols v. Davidson Hotel,* 333 S.W.2d 536 (Mo.App.1960), each presents a scenario not present in the instant case.

Appellant had clocked out of work and was standing in the street, off the respondent's property, looking at his car when something happened and his hand was cut. Respondent's employer had asked appellant to move his car but there had been no order for him to do so. Affidavits by both Ar-

teese and Horak indicate they expected him to move the car, but not during working hours.

The appellant cites numerous cases to support his position yet each falls short in view of the evidence in the instant case. As the court noted in *Page v. Green, supra,* 686 S.W.2d at 530, each case involving whether an accident arose out of and in the course of employment must be decided on the facts of that case.

In *Finley v. St. Louis Smelting & Refining Co., supra,* 233 S.W.2d at 725–6, the facts were quite similar to those herein. The employee's car was parked on the company's lot and the fan stuck when he started up to go home after work. Employee tried to loosen the fan with his hand. He was imminently successful; the fan abruptly started and cut off two of his fingers. The lot was graveled, lighted and a watchman was on duty. Signs were posted as to proper parking on the lot. The court stated, "His injury was caused by his own automobile over which the company had no control." *Id.,* at 728. Despite the fact that the lot was for convenience and benefit of both employers and employees, the court determined the injury was not compensable. *Id.*

Appellant's Point I is denied.

■ The Commission found that the appellant's activity at the time of his injury was of no benefit to the employer. In his Point II, appellant takes exception to this ruling.

The appellant had parked his car on a public street because it had ceased to run. Appellant expressed a desire to repair the car, "When [he] got around to it." The car sat on Buchannan street for "better than a week." Appellant stated that Mr. Arteese asked him to move the car. The next day following this exchange appellant made arrangements for his mechanic to come fix the car.

The appellant mistakenly believes that the evidence supports the theory of a mutual benefit resulting from his removal of the car. Such a theory is not supported by the evidence.

The administrative law judge found the alleged benefits to the employer "so nebulous as to be non-existent." This finding was supported by substantial and competent evidence. At all times the car was parked on a public street. Appellant claims that the employer benefited by having an open parking space on the street. This space was not reserved and any driver, not necessarily a customer of H. E. Miller Oldsmobile, could park his car there. The removal eliminated an eyesore from the area yet there was no evidence the unsightly nature of the car was attributable to H. E. Miller Oldsmobile. Appellant's Point II is denied.

Appellant further seeks recovery alleging the award is erroneous because the public purpose of the Workers' Compensation Act is to require the risk of injury to an employee while performing acts beneficial to the employer be borne by the industry. Certainly, the case law supports the theory that liberal construction is to be given to those cases arising under the Workers' Compensation Act. *Page v. Green, supra,* 686 S.W.2d at 530, and all doubt is to be resolved in favor of the employee. *Barr v. Vickers, Inc.,* 648 S.W.2d 577, 580 (Mo.App.1983). The caveat to this construction is that it be on the entire record in the light most favorable to the Commission's decision.

The Commission's decision was based on substantial evidence. No applicable public policy exists that would nullify the Commission's findings. Appellant Point III is denied.

For Point IV appellant alleges the Administrative Law Judge erred by admitting a certified copy of the City of North Kansas City Municipal Code, Motor Vehicle and Traffic section into evidence over appellant's objection.

The appellant claims this as error but fails to submit to the court any citations of authority. Rule 84.04(d). The court notes ex gratia that § 490.240 RSMo 1978, authorizes city ordinances certified under the hand of the officer having the same in lawful custody and affixed with the city seal shall be received into evidence without further proof. Employer's Exhibit 1 was the ordinance complained of and was properly certified and sealed.

Appellant has the burden of establishing reversable error and the record before us does not affirmatively establish the Administrative Law Judge erred in receiving the ordinance into evidence. *See Sorrell v. Hudson,* 335 S.W.2d 1, 5 (Mo.1960). Appellant Point IV is denied.

Judgment affirmed.

All concur.