David ULLUM, Plaintiff–Appellant,

v.

GEORGE CARDEN CIRCUS INTER-NATIONAL, INC., and Treasurer of the State of Missouri, as Custodian for the Second Injury Fund, Defen-dants–Respondents.

No. 27971.

Missouri Court of Appeals, Southern District, Division One.

May 23, 2007.

---

David Simpson, St. James, for Appellant.

Stephen M. Prosperi, St. Louis, for Respondent George Carden Circus International, Inc.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Andrew Lyskowski, Springfield, for Respondent Treasurer of the State of Missouri–Custodian 2nd Injury Fund (no brief filed).

NANCY STEFFEN RAHMEYER, Presiding Judge.

David Ullum ("Claimant") appeals the denial of workers' compensation by the Labor and Industrial Relations Commission ("the Commission"). First, Claimant alleges that the Commission improperly determined that he was a farm laborer pursuant to § 287.090.1(1)[1] and therefore was not eligible for workers' compensation. Second, Claimant argues that the Commission incorrectly determined that he was not an employee of George Carden Circus International, Inc. ("the Circus") at the time he developed carpal tunnel syndrome in 2004. Finding no error, we affirm.

The administrative law judge ("ALJ") in this case detailed Claimant's relevant employment history as follows:

[I]n approximately 1990, Claimant began working for George Carden and Carden's uncle. Carden asked Claimant to work on a farm or ranch that Carden and his uncle had purchased. For the first year or so, Claimant was paid by George Carden in cash. Beginning sometime in 1991, Claimant was paid, by check, by [the Circus]. For the years 1992 and 1994, Claimant received a Form W–2 from [the Circus] showing wages of $7,500.00. For the year 1995, Claimant received a Form W–2 from [the Circus] showing wages of $5,250.00.

For the years 1996–1999, Claimant received Forms W–2 from [the Circus], showing annual earnings, respectively of $8,425.00, $9,275.00, $9,650.00 and $11,000.00. For the year 2000, Claimant received a Form W–2 from [the Circus] showing wages of $11,600.00. For the year 2001, Claimant received a Form W–2 from [the Circus] showing wages of $11,700.00. For the year 2003, Claimant received a Form W–2 from [the Circus] showing wages of $12,300.00.

For the year 2003, Claimant received a Form W–2 from [the Circus] showing wages of $5,775.00; these wages were paid from January 3, 2003, through June 13, 2003. On June 13, 2003, Claimant received a personal check from "George Carden" for $150.00. Beginning September 12, 2003, and ending December 12, 2003, Claimant received 11 checks from "GC Ranch", totaling $3,303.77. These checks were all signed by "Loretta Clay". Ms. Clay testified on behalf of the alleged employer and its insurer, St. Paul/Travelers; Ms. Clay testified that she was an "office manager of the [C]ircus" for more than 20 years and that she

---

**1.** All references to statutes are to RSMo 2000, unless otherwise specified.

also "pays the farm bills". It is unclear from the evidence if Claimant received any pay between June 13, 2003, and September 12, 2003, and if so, from what source.

Approximately eighty to ninety percent of the work Claimant performed occurred on Mr. Carden's ranch which Mr. Carden purchased as a source of wood to burn for heat at the Circus headquarters in Greene County, Missouri. While at the ranch, Claimant would cut, stack and load wood; rake, mow and plant grass; grade the road; build fences; grow and cut hay; operate a variety of heavy equipment, including a hay baler, concrete mixer, Bobcat, and tractor; and care for cows and buffalo. When he was working away from the ranch, Mr. Carden had Claimant build fences, cut wood, cut hedge posts, and maintain the parking lot at the Circus headquarters. Claimant also set up and took down flooring when the Circus was performing in Springfield about eight days out of the year.

On May 30, 2003, Claimant injured his left hand while operating a hay baler on the ranch. He received three months of treatment for the injury. Because the Circus workers' compensation insurance denied coverage for the injury, Mr. Carden paid a portion of Claimant's expenses. It is not entirely clear from the testimony at the hearing that it was Carden's *homeowner's* insurance that covered Claimant's expenses. Claimant testified, "George told me he'd do it his—he would do everything Work Comp would do. He would pay me for a 40–hour week and pay all my hospital bills.... He told me that Work Comp wouldn't cover it[.]" When asked who paid his bill for treatment from Dr. Clarke, Claimant testified that "American Family Insurance paid most of it."

When Claimant returned to work part time in June 2003, he was only paid by Mr. Carden's personal account and not by the Circus. Commencing late in 2003, Claimant experienced pain and stiffness in both his right and left hands. Due to the worsening condition of Claimant's hands he quit working on March 20, 2004. Dr. Matthew Rieth treated Claimant in September 2005. After conducting a variety of tests, Dr. Rieth diagnosed Claimant with moderate to advanced right carpal tunnel syndrome in the right hand. In Claimant's left hand, Dr. Rieth recommended an x-ray to determine whether there were arthritic changes in the area of the fracture and suggested Claimant may ultimately require ongoing anti-inflammatory medications.

Claimant filed workers' compensation claims for the injuries to his hands. On both claims he listed the Circus as his employer. In its answers, the Circus admitted it was fully insured as to all liability under Missouri's workers' compensation law. The answers deny every other allegation contained in the claims.

The ALJ denied Claimant's requests for a temporary award of medical treatment for both hands and temporary total disability benefits. In addition, the ALJ determined that Claimant was "clearly an employee of [the Circus]" when he injured his left hand on May 30, 2003, but that Claimant was not an employee of the Circus at the time he developed carpal tunnel syndrome in 2004. The ALJ concluded that "Claimant was engaged in 'farm labor' at the time of each claimed injury" and therefore was not eligible for relief under Missouri's workers' compensation law because of the "farm labor" exemption in § 287.090.1(1). The Commission affirmed the ALJ's determination without amendment.

In his first point, Claimant contends that he was not engaged in "farm labor" at the time of each injury; rather, he was a

"handyman" which included a combination of tasks which sometimes conferred a benefit on the Circus and other times conferred a benefit on Mr. Carden personally.

In reviewing an award by the Commission, our review is limited to a determination of whether, in light of the entire record, there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). If an award "is contrary to the overwhelming weight of the evidence," then it is not supported by competent and substantial evidence, and must be overturned on appeal. *Id.* We review the Commission's interpretation or application of the law *de novo. Ristau v. DMAPZ, Inc.*, 130 S.W.3d 602, 604 (Mo.App. W.D.2004).

Section 287.090.1 exempts from workers' compensation coverage "employment of farm labor." Whether Claimant falls within this exception depends upon the whole character of the work performed and not on the general occupation or business of the employer, the particular work he is performing at time of his injury, or by the place where such work is performed. *Albin v. Hendrich Bros. Implement Co.*, 382 S.W.2d 734, 739 (Mo.App. 1964); *Dost v. Pevely Dairy Co.*, 273 S.W.2d 242, 243 (Mo.1954). To be a farm laborer the individual must be engaged in acts that are usually performed in the operation of a farm. *Dost*, 273 S.W.2d at 243. A worker is not a farm laborer merely because at the time of the injury he is doing work on a farm or because a task on which he is engaged at the time is sometimes performed by a farm laborer. *Albin*, 382 S.W.2d at 739. Missouri courts have held the following actions usually constitute farm labor: care of livestock, *Davis v. McKinney*, 303 S.W.2d 189, 192 (Mo.App.1957), milking cows, *Selvey v. Robertson*, 468 S.W.2d 212, 215 (Mo.App.1971)

(overruled on other grounds by *Hampton*, 121 S.W.3d at 232), and the care and breeding of cows on a farm, *Plemmons v. Pevely Dairy Co.*, 241 Mo.App. 659, 233 S.W.2d 426, 428 (1950).

Claimant's employment on the ranch included such tasks as general ranch maintenance, cutting wood, building fences, grading a road, planting and mowing grass, cutting hay bales, taking care of cows and feeding a buffalo. When considering the "whole character" of Claimant's work performed at the ranch, we cannot say that the Commission incorrectly concluded that Claimant was a farm laborer. Point I is denied.

Given this Court's conclusion that Claimant performed farm labor, and, therefore, is exempted from workers' compensation coverage, it is unnecessary to review his second point in which he claims that the Commission incorrectly concluded that he was not an employee of the Circus at the time he developed carpal tunnel in 2004. Point II is denied. The Commission's decision is affirmed.

PARRISH and SCOTT, JJ., concur.